AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV 01 2019

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung phone (White)
Seized as FP&F No. 2020250600003401

Case No. 19MJ4861

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 and 960 | Importation of Methamphetamine |

The application is based on these facts:

See attached Affidavit in support of this Application

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Adam J. Cross, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/1/19

*Judge's signature*

City and state: San Diego, California

Hon. Barbara L. Major
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Samsung phone (White)
    Seized as FP&F No. 2020250600003401    (Exhibit 005)
    Described in the attached Affidavit as "**Target Device 1**"

**Target Device 1** is currently in the possession of Homeland Security Investigations, evidence vault located at 2255 Niels Bohr Court, San Diego, CA 92154. Below is a picture of **Target Device 1**:



## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of 30 DAYS prior to October 10, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, and 960.

# AFFIDAVIT

I, Special Agent Adam J. Cross, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

- Samsung phone (White)
  Seized as FP&F No. 2020250600003401    (Exhibit 005)
  **"Target Device 1"**

- Samsung phone (Black)
  Seized as FP&F No. 2020250600003401    (Exhibit 005)
  **"Target Device 2"**

(collectively, **"Target Devices"**), as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, and 960, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Cynthia Veronica RAMOS Martinez ("Defendant") for importing approximately 13.92 kilograms (30.68 pounds) of Methamphetamine, 3.24 kilograms (7.14 pounds) of Cocaine, 1.18 kilograms (2.59 pounds) of Heroin, and 1.18 kilograms (2.59 pounds) of Hash Oil from Mexico into the United States. *See U.S. v. Cynthia Veronica RAMOS Martinez*, Case No. 19-mj-4426 (S.D. Cal.) at ECF No. 1 (Complaint). The Target Device is currently in the H.S.I. evidence vault located at 2255 Niels Bohr Court, San Diego, CA 92154.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device 1 and 2, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I am a "law enforcement officer of the United States" within the meaning of

Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been employed as a Special Agent ("SA") with Immigration Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since January 2019. I am presently assigned to a contraband smuggling group in San Diego, CA, that focuses on narcotics smuggling on the Southwest Border. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses and work closely with other agencies, including the U.S. Drug Enforcement Administration. I have been a federal law enforcement officer for over 4 years. I entered on duty with ICE Enforcement and Removal Operations ("ERO") as a Deportation Officer in September of 2015. I held the title of Deportation Officer during the three and a half years that I worked for ERO and was on the Special Response Team (SRT) for three years (ICE's SRT is the Homeland Security's version of a SWAT team). I have conducted more than one hundred immigration arrests and with SRT assisted in serving multiple criminal arrest warrants. I have conducted interviews, and performed various forms of surveillance that have resulted in arrests, indictments and convictions. As a result of these investigations, I have become familiar with the methods and techniques used by narcotics traffickers to import narcotics into the U.S. and distribute those narcotics within the U.S. and the methods and techniques used by narcotics traffickers to derive, launder, and conceal illicit proceeds, and to use those proceeds to promote and facilitate unlawful activity. As an HSI Special Agent I attended the Criminal Investigator Training Program (CITP) and HSI Special Agent Training (HSI SAT) at the Federal Law Enforcement Training Center in Glynco, GA. I have received formal training relative to the investigation of narcotics trafficking, money laundering, bulk cash smuggling, dark web, transportation, layering, structuring and other techniques used to facilitate narcotics trafficking and to launder illicit proceeds. My qualifications and experience also come from serving in the military beginning in 2001. I initially enlisted in the United States Army but later commissioned as an Officer was trained as an aviator for

1 Blackhawk HU-60 helicopters

    5. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

    6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

    7. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to import methamphetamine, cocaine, heroin, hash oil or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, cocaine, heroin, hash oil or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, cocaine, heroin, hash oil or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, heroin, hash oil or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8. On October 9, 2019, at approximately 5:00 p.m., defendant Cynthia Veronica RAMOS Martinez applied for permission to enter the United States at the Otay Mesa Port of Entry. RAMOS, a Mexican Citizen, was the driver, registered owner, and sole occupant of a White 2008 Mazda CX9 bearing a Mexican license plate A86nWG7.

9. A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the quarter panels of the RAMOS's vehicle. A Customs and Border Protection Officer ("CBPO") received two negative Customs declarations from RAMOS. RAMOS stated she was crossing the border to go to Chula Vista, California.

10. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the rear

4

quarter panels of the vehicle. RAMOS was referred for secondary inspection, and Customs and Border Protection Officers discovered 35 packages concealed within the rear quarter panel of her vehicle. In all, the seizure resulted 13.92 kilograms (30.68 pounds) of Methamphetamine, 1.18 kilograms (2.59 pounds) of Heroin, 3.24 kilograms (7.14 pounds) of cocaine and 1.18 kilograms (2.59 pounds) of hash oil were found concealed within of the vehicle. RAMOS was subsequently arrested. **Target Devices** were recovered from RAMOS by a CBPO.

11. Later, agents read RAMOS her *Miranda* rights, and she declined to speak to agents without an attorney present. RAMOS also declined to provide consent to the agents to perform a search of **Target Devices**.

12. Upon completion of follow up interviews with RAMOS's family members, the agents learned that RAMOS is a member of a motorcycle gang that meets in Tijuana and Ensenada. Through interviews it was discovered that RAMOS communicated with members of the motorcycle gang using her cellphone.

13. In light of the above facts, and my own experience and training, there is probable cause to believe that RAMOS was using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States.

14. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning 30 DAYS prior to October 10, 2019, the day after RAMOS' arrest.

//
//

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

19. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, and 960.

20. Because the **Target Devices** was seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device. As stated above, I believe that the appropriate date range for this search is 30 DAYS prior to October 10, 2019, the day after RAMOS' arrest.

21. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Adam J. Cross
Homeland Security Investigations

Subscribed and sworn to before me this 1st day of ~~October~~ Nov, 2019.

Hon. Barbara L. Major
United States Magistrate Judge

7